**E-FILED**
Tuesday, 12 November, 2013  10:55:44 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 12-CR-20022 |
| | ) | |
| DEANDRE HAYNES, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Defendant, Deandre Haynes, was convicted at jury trial on May 2, 2013, of conspiracy to manufacture methamphetamine, conspiracy to possess and distribute pseudoephedrine in the manufacture of a controlled substance, and possession of pseudoephedrine for use in the manufacture of a controlled substance.  Defendant had made a motion for acquittal at the close of the government's case-in-chief, which was denied, and renewed his motion (#165) on May 14, 2013.  Defendant filed a Motion for a New Trial (#177) on June 27, 2013.  The government filed its Responses (#198, #199) on October 18, 2013.  For the following reasons, Defendant's Motion for Judgment of Acquittal (#165) and Motion for a New Trial (#177) are DENIED.

MOTION FOR JUDGMENT OF ACQUITTAL (#165)

Defendant incorporates the memorandum and arguments he made in his motion for acquittal during trial into the current Motion for Judgment of Acquittal (#165).  Defendant argues that he was not proven guilty beyond a reasonable doubt of being engaged in a conspiracy, and that the

government only proved the existence of a "buyer-seller" relationship, which does not amount to a conspiracy.

Under Rule 29(c) of the Federal Rules of Criminal Procedure, "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). "The issue on a motion under Rule 29(c) is the same as the issue on appeal: whether the evidence, taken in the light most favorable to the verdict, permits a sensible person to find beyond a reasonable doubt that the defendant committed the crime alleged." *United States v. Genova*, 333 F.3d at 750, 757 (7th Cir. 2003). Rule 29 does not permit the trial judge "to play thirteenth juror." *Genova*, 333 F.4d at 757.

To prove a conspiracy to manufacture methamphetamine and a conspiracy to possess and distribute pseudoephedrine for use in the manufacture of methamphetamine, the government was required to prove beyond a reasonable doubt that Defendant knowingly and intentionally joined an agreement with at least one other person to commit an unlawful act, here the manufacture of methamphetamine and the possession or distribution of pseudoephedrine for use in the manufacture of methamphetamine. See *United States v. Rea*, 621 F.3d 595, 608 (7th Cir. 2010). The Seventh Circuit has cautioned, however, that:

> "[t]here is a distinction [] between a mere buyer-seller relationship and a defendant's participation in a conspiracy. [citation omitted] In a buyer-seller relationship, 'the sale of drugs, without more, does not constitute a conspiracy because the sale itself is a substantive crime.' [citation omitted] But '[a]ll that is necessary to establish a drug distribution conspiracy is an understanding related to

the subsequent distribution of narcotics.' [citation omitted]  In order to carry its

burden, '[t]he government need only show an agreement that goes beyond the

*individual* sale between buyer and seller." *Rea*, 621 F.3d at 608 (emphasis in

original).

The agreement does not need to be formal, and the government may establish the

agreement through circumstantial evidence.  *Rea*, 621 F.3d at 608.  A jury can infer the

conspiracy from the parties' course of dealing, such as when the defendant and a co-conspirator

were on the "same side of the transaction." *Rea*, 621 F.3d at 608, quoting *United States v.*

*Johnson*, 437 F.3d 665, 675 (7th Cir. 2006).  Other evidence the government may present to

prove conspiracy to distribute drugs includes: sales of large amounts of drugs, prolonged

cooperation, a level of mutual trust between the parties, standardized dealings, and sales on a

consignment or "fronted" basis.  *Rea*, 621 F.3d at 608.  However, because some of these factors

individually may create an inference of either a buyer-seller relationship or a conspiracy to

distribute drugs, the Seventh Circuit has clarified that the following examples weigh more

heavily in favor of finding a conspiracy:

> "sales on credit or consignment, an agreement to look for other customers,
>
> a payment of commission on sales, an indication that one party advised the other
>
> on the conduct of the other's business, or an agreement to warn of future threats
>
> to each other's business stemming from competitors or law-enforcement
>
> authorities."  *Rea*, 621 F.3d at 608, quoting *United States v. Johnson*, 592 F.3d
>
> 749, 755-56 (7th Cir. 2010).

Here, it should be noted that Defendant was not convicted of conspiracy to distribute *methamphetamine*, the finished product, but rather with conspiracy to *manufacture* methamphetamine (Count I) and conspiracy to possess and distribute *pseudoephedrine* in the *manufacture* of methamphetamine (Count II).  This fact distinguishes this case from *United States v. Valdez-Santos*, 370 F.Supp. 1051 (E.D. Cal. 2005), reversed on other grounds by *United States v. Valdez-Santos*, 457 F.3d 1044 (9th Cir. 2006), where the defendant was charged with conspiracy to both manufacture and *distribute* methamphetamine.  *Valdez-Santos*, 370 F.Supp.2d at 1052.  Defendant was not part of a conspiracy to distribute methamphetamine, but rather was part of a conspiracy to manufacture methamphetamine, and distribute pseudoephedrine in the manufacture of that methamphetamine.  The court agrees with the government that the buyer-seller defense does not apply in this circumstance.  Defendant has cited to no case law where the buyer-seller relationship defense applies in a case purely concerned with a conspiracy to manufacture an illicit drug.

However, assuming *arguendo* the "buyer-seller" defense applies to the conspiracy to manufacture, the court agrees with the government that the evidence in this case is overwhelming that Defendant was engaged in a conspiracy to manufacture methamphetamine.  He had full knowledge that the pseudoephedrine was being used to cook methamphetamine.  Jennifer McCullough, a co-conspirator, fully explained to Defendant how the manufacturing process would work when she recruited him to use his crack distribution network to obtain pseudoephedrine.  Defendant was well-aware of the role he was playing in the methamphetamine manufacturing process.  He was given small amounts of the finished product.  He also discussed with Joe Long (a methamphetamine cook) the viability of selling the product to crack addicts in

-4-

Chicago, but they decided not to expand into the Chicago market because crack users would most likely not like methamphetamine.  Further, Defendant had a stake in the outcome of the manufacture, in that Defendant made at least $30 per box of pseudoephedrine he sold to Jennifer McCullough and Joe Long for production of methamphetamine.  When the meth production ran into difficulty, such as trouble cooking the meth and selling sufficient meth to provide McCullough money to pay Defendant for more pseudoephedrine, Defendant became involved and McCullough found a new cook.  When that cook was arrested, Defendant contacted him and asked him for the contact information for a new cook to take his place.  Defendant did have a stake in the operation to ensure that it continued operating to provide him with a market for his pseudoephedrine.

Defendant was also involved in stimulating the manufacturing business, by telling Joe Long that, if Long could cook more, Defendant would provide more pseudoephedrine. Defendant recruited his crack buyers to become a network of pseudoephedrine pill purchasers. Acting on the direction of Jennifer McCullough, Defendant trained these people on how to purchase large amounts of pseudoephedrine and avoid detection by law enforcement.  Defendant further provided an enormous amount of pseudoephedrine to manufacture the meth, such as over 1,000 boxes of pseudoephedrine to Long alone.  Defendant also provided other ingredients to Long, such as lithium batteries, to manufacture the methamphetamine.  Finally, Defendant would, on occasion, front boxes of pseudoephedrine to McCullough if he had more boxes than she could pay for.  She would pay Defendant the next week.  At other times, McCullough would front Defendant money when he did not have all of the boxes she had money to buy, and then he

would make up the difference the following week.  This exhibited a level of trust between

Defendant and the other members of the conspiracy.

Defendant was engaged, with McCullough, Long, and others, in far more than a mere

buyer-seller relationship.  This was a large conspiracy to manufacture methamphetamine, in

which Defendant, as the main purchaser and supplier of pseudoephedrine, was an important cog.

The evidence is overwhelming that this was a conspiracy.  This evidence, taken in the light most

favorable to the government, would certainly permit a rational person to find beyond a

reasonable doubt that Defendant committed the crime alleged.  See *Genova*, 333 F.3d at 757.

Defendant's Motion for a Judgment of Acquittal (#165) is DENIED.

MOTION FOR A NEW TRIAL (#177)

In his Motion for a New Trial (#177), Defendant makes two arguments: (1) failure to

instruct the jury on a buyer-seller relationship was error that jeopardized his substantial rights;

and (2) the government violated his equal protection rights when it purposefully excluded a

black member of the venire from the jury.

Rule 33 of the Federal Rules of Criminal Procedure states:

"Upon the defendant's motion, the court may vacate any judgment and

grant a new trial if the interest of justice so requires.  If the case was tried without

a jury, the court may take additional testimony and enter a new judgment."  Fed.

R. Crim. P. 33(a).

When evaluating a Rule 33 motion for a new trial, the court of appeals' task is to

determine whether the verdict is so contrary to the weight of the evidence that a new trial is

required in the interests of justice.  *United States v. Chambers*, 642 F.3d 588, 592 (7th Cir. 2011);

See also *United States v. Kosth*, 257 F.3d 712, 718 (7th Cir. 2001), quoting 3 Charles Alan

Wright, Federal Practice and Procedure: Criminal (2d), § 559, at 368 (1982) ("Our review of the

district court's denial of the Rule 33 new trial motion is also deferential; as the late Professor

Charles Alan Wright's respected treatise puts it, '[t]he appellate court properly defers to the view

of the trial court on [the denial of a Rule 33 motion], and will affirm unless there has been error

as a matter of law or a clear and manifest abuse of judicial discretion.'").  "***[C]ourts have

interpreted the rule to require a new trial 'in the interests of justice' in a variety of situations in

which the substantial rights of the defendant have been jeopardized by errors or omissions during

trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989), quoting *United States v.

Simms*, 508 F.Supp. 1188, 1202 (W.D.La. 1980).

I.      Whether the Jury Should Have Been Instructed on a Buyer-Seller Relationship

Defendant argues that he was entitled to the Jury Instruction (#145) he submitted, or a

similar instruction, addressing a buyer-seller relationship and that the court's failure to include

such an instruction was error and affected his substantial rights.  Thus, Defendant argues the

court should vacate Defendant's conviction on Count I and order a new trial.

It is well-settled in the Seventh Circuit that a defendant is entitled to a jury instruction on

his or her particular theory of defense if: (1) the instruction represents an accurate statement of

the law; (2) the instruction reflects a theory that is supported by the evidence; (3) the instruction

reflects a theory which is not already part of the charge; and (4) the failure to include the

instruction would deny the defendant a fair trial.  *United States v. Linwood*, 142 F.3d 418, 422

(7th Cir. 1998).

As noted above, on Defendant's Motion for Judgment of Acquittal, the court finds that the buyer-seller defense does not apply in the manufacturing context. The buyer-seller defense does not apply in a manufacturing context because the object being bought and sold is not what is being manufactured. As noted by the government, the focus of the charge is on the agreement to manufacture methamphetamine, not on the distribution and sale of said methamphetamine. The issue is whether Defendant agreed with others to manufacture meth, and, as detailed above in the portion of this order concerning the motion for acquittal, Defendant did clearly agree to manufacture meth. The court agrees with the government that the end object of the conspiracy charged was to manufacture methamphetamine, not to distribute the drug. Further, Defendant has not provided this court, and this court has not found, case law where the buyer-seller defense was employed in a conspiracy case solely focused on conspiracy to manufacture an illegal drug. Thus, the buyer-seller factors are not relevant in this situation, and Defendant was not entitled to a buyer-seller jury instruction.

II.       Whether a *Batson* Violation Occurred

Defendant argues that the government violated *Batson v. Kentucky*, 476 U.S. 79 (1986), when it excluded Juror 31, an African-American woman, from the jury via its second peremptory strike.[1]  During *voir dire*, Juror 31 was not sure if defense counsel had represented her in court on a prior traffic ticket. Defense counsel indicated he did not represent Juror 31 and had never met her before. Juror 31 also had a question about witnesses in the case, asking the court if there

---

[1]As noted in the government's Response (#199), there were three African-Americans in the jury pool: (1) Juror 31, who was struck by the government; (2) one woman who asked to be excluded because she did not think she could be fair and was seated as an alternate juror; and (3) Juror 34, an African-American male, who served as a juror in this case and was not challenged by either party.

was a difference between recognizing a witness name versus recognizing a witness face.  The

court clarified the matter for Juror 31.  Juror 31 also noted she had a sister who "just parties" and

that her father had a prior conviction for driving under the influence (DUI) in the late 1990s.

Juror 31 indicated that she could decide the case fairly and solely on the evidence presented in

the courtroom, including the exhibits and instructions provided by the court.

Following *voir dire* of the prospective jurors, the parties exercised their peremptory

challenges.  The government elected to strike Juror 31, giving as reasons: (1) Juror 31's tattoos;

(2) traffic record; (3) uncertainty about whether defense counsel had previously represented her;

(4) her uncertainty about whether she knew any of the witnesses until she saw them; and (5) the

fact that her father, who lived with her, had a previous DUI.  The government also noted Juror

31's "boisterous" behavior in the courtroom, such as talking before the court had addressed her.

Defense counsel objected, arguing that Juror 31's behavior was not any different from any other

prospective juror's on the venire.  The court inquired of the government whether it intended to

strike Juror 34 (African-American male), saying "[t]here would be absolutely nothing in his

questionnaire or in his response to strike him, unless it was a pattern that you were going to

strike [Juror 31] first and [Juror 34] next and get rid of all African-Americans."  The government

indicated it did not intend to strike Juror 34.  The court then stated:

> "I will allow you to strike [Juror 31] at this time, just as anyone can strike
>
> any other juror who seems to be a little different.  And the fact she's African-
>
> American at this point is not a problem.  If the government ultimately strikes

[Juror 34], then I'm going to reconsider my ruling on [Juror 31].  But at this time, she will be the government's second peremptory, over the objection of the defense." The court later stated:

"I did want to complete the record as to [Juror 31].  As I indicated on the record, we had two African-American jurors in the array: [Juror 31] and [Juror 34]. [Juror 34] has been seated as one of the twelve jurors.  I do not find that there was any intent from the government in excusing [Juror 31], as an African-American juror.  I found that the government's statements were non-racially motivated and no intent to excuse her because she was either African-American or female, but that they were legitimate observations of how she acted and spoke and things on her questionnaire that cause the government to excuse her, which I find is a legitimate reason, non-racially motivated. [Juror 34] is an extremely well-qualified, well-educated man; and since he remains, the Court believes that there was no intent to excuse [Juror 31] because of her race."

The exclusion of even a single prospective juror on the basis of race violates the Equal Protection Clause of the United States Constitution.  *United States v. Rutledge*, 648 F.3d 555, 558 (7th Cir. 2011), citing *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008).  "To prove a violation under *Batson*, 'once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two).  If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful discrimination.'" *Rutledge*, 648 F.3d at 558, quoting *Purkett v. Elem*, 514 U.S.

765, 767 (1995).  The ultimate burden of persuasion remains with the opponent of the strike

throughout the analysis.  *United States v. White*, 416 F.3d 634, 640 (7th Cir. 2005).

 Here, because the government volunteered a race-neutral explanation for its exercise of

the peremptory strike, and this court went on to rule on the ultimate issue of whether the race-

neutral explanation was really a pretext for discrimination, the issue of whether Defendant has

made a prima facie case is moot.  See *White*, 416 F.3d at 641.  The government therefore, had to

produce race-neutral justifications for using the peremptory challenge, which it did.  This

explanation does not have to be particularly persuasive, it just cannot be a lie covering up a race-

based motive.  *White*, 416 F.3d at 640.  Further, unless a discriminatory intent is inherent in the

prosecution's explanation, the reason offered will be deemed race-neutral.  *United States v.*

*Hendrix*, 509 F.3d 362, 370 (7th Cir. 2007).  This court found that the reasons advanced by the

government were race-neutral.  The government's reasons were based on Juror 31's behavior in

court and confusion over whether she knew potential witnesses and whether defense counsel had

represented her in traffic court.  The court sees no reason to disturb its earlier ruling.

 Therefore, the *Batson* analysis moves to the third step, where the court must determine

whether the government's reasons were pretextual and whether Defendant has proven purposeful

discrimination.  *White*, 416 F.3d at 640.  The crucial question at the third step is the

persuasiveness of the government's justification for her peremptory strike, which comes down to

whether this court finds the government's race-neutral explanations to be credible.  See

*Rutledge*, 648 F.3d at 558.  The reasons provided by Defendant do not persuade the court that the

government's race-neutral explanations were pretextual.  Defendant argues that the government

struck Juror 31 for having a family member with a DUI, while not striking Jurors 119 and 100

who also had family members convicted of DUI.  However, as noted by the government, Defendant struck Juror 119 with its peremptory challenge prior to the government's striking of Juror 31.  Then, immediately after the government struck Juror 31, Defendant struck Juror 100.  The government did not have an opportunity to use a future peremptory challenge to strike Juror 100 before Defendant acted to strike Juror 100 first.  Further, the Seventh Circuit has upheld the striking of African-American jurors in a *Batson* analysis where those jurors have had family members convicted of crimes.  See *United States v. Brown*, 289 F.3d 989, 993 (7th Cir. 2002) (upholding the government's striking of an African-American juror because her husband had been convicted of a firearms charge twenty years earlier because the court of appeals "had no trouble accepting that the prosecutor legitimately feared this past experience could nonetheless color her views.").  Defendant also argues that Juror 31's behavior was not out of the ordinary, but the Seventh Circuit has held that a defendant's demeanor is a valid race-neutral reason to excuse a juror.  *United States v. McMath*, 559 F.3d 657, 665 (7th Cir. 2009).  Here, Juror 31 appeared confused over whether she knew defense counsel and exhibited a courtroom demeanor that concerned the government.  The court agreed, and sees no reason, based on Defendant's motion, to reverse its opinion that the proffered race-neutral justifications were not pretextual. The court finds the government's race-neutral explanations to be credible.

Defendant has offered no evidence that the government's race-neutral reasons were pretextual.  The court agrees with the government that "[D]efendant's argument boils down to his claim that striking one out of three African-Americans from the venire in and of itself establishes purposeful discrimination by the United States."  The Seventh Circuit has rejected such arguments, and it has even upheld circumstances where the sole African-American member

-12-

of the venire was struck.  See *United States v. Alanis*, 265 F.3d 576, 584 (7th Cir. 2002)

(upholding dismissal of sole African-American juror for lack of education).  Defendant has

failed to prove the government's proffered race-neutral explanations were pretextual under

*Batson*.  For the foregoing reasons, Defendant's Motion for a New Trial (#177) is DENIED.

IT IS THEREFORE ORDERED:

(1) Defendant's Motion for Judgment of Acquittal (#165) and Motion for a New Trial

(#177) are both DENIED.

(2) This case remains set for sentencing before this court at 9:00 a.m., Wednesday,

November 20, 2013, in Courtroom A.

ENTERED this 12th day of November, 2013

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE